UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNTHIA MBAH,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br><br>Respondent. | No. 1:26-cv-04896-DJC-CSK<br><br><u>RELEASE ORDER</u><br><br>A# 221-421-939 |

Petitioner Synthia Mbah has filed a Petition for Writ of Habeas Corpus ("Pet." (ECF No. 1)) and a Motion for Temporary Restraining Order (Mot. (ECF No. 8)) seeking release from immigration custody after nine months of detention. For the reasons stated below, the Petition is granted as to the first ground for relief.

## BACKGROUND

Petitioner is a citizen of Cameroon who was taken into custody upon entry on November 27, 2025. (Mem. (ECF No. 8-3) at 6.) Petitioner has a nine-year-old son residing in the United States. (Pet. (ECF 1) at 3). She has been in the custody of Immigration and Customs Enforcement (ICE) since her entry into the United States. (Mem. at 6.) After Petitioner was found by a United States Citizenship and

Immigration Services official to have credible fear of persecution, Petitioner applied for asylum and other relief based on the governmental abuse, detention, and sexual violence she had suffered in retaliation for her work at an NGO promoting human rights and the rule of law. (*Id.* at 6–7). The Department of Homeland Security moved to pretermit her asylum case and remove her to Uganda, and the Immigration Judge granted the motion. (*Id.* at 8). Petitioner appealed to the BIA and sought a three-week extension for briefing, which the BIA granted. (Reply (ECF No. 11) at 4.) That appeal remains pending. (Mem. at 9.) The briefing on this matter is complete. (Pet. (ECF No. 1); Mot (ECF No. 8); Mem.; Opp'n (ECF No. 10); Reply; Suppl. Decl. (ECF No. 14).)

**DISCUSSION**

Petitioner raises claims similar to ones this Court has already addressed. This Court has joined other district courts in concluding that unreasonably prolonged detention under section 1225(b) without a bond hearing can violate the Due Process Clause. *See, e.g., Mohammad v. Warden of Cal. City Det. Ctr.*, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368 (E.D. Cal. Jan. 26, 2026); *Saribekyan v. Chestnut*, No. 1:26-cv-01696-DJC-DMC (E.D. Cal. Mar. 19, 2026); *Du v. Chestnut*, No. 1:26-cv-01435-DJC-CSK, 2026 WL 823090 (E.D. Cal. Mar. 23, 2026); *see also Abdul-Samed v. Warden* of Golden State Annex Det. Facility, No. 1:25-cv-00098-SAB, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) (explaining that "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process") (quoting *Martinez v. Clark*, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 2:18-cv-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)).

Petitioner has a clear liberty interest in securing her freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v.*

*Davis*, 533 U.S. 678, 690 (2001). Petitioner faces indefinitely prolonged detention while the administrative and potentially judicial review of her case takes place. As Petitioner has been deprived of the liberty secured by the Due Process Clause and this deprivation will continue for a protracted and indefinite period, Petitioner has established her liberty interest. *See Zadvydas*, 533 U.S. at 690, 693.

Having established that Petitioner has a protected liberty interest, the Court must determine whether Petitioner is due process under the Constitution. Courts in this Circuit weigh the following factors to ascertain when prolonged detention violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019); *see, e.g., Sandesh v. LaRose*, No. 3:26-cv-00846-JES-DDL, 2026 WL 622690 (S.D. Cal. Mar. 5, 2026) (finding "it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1225(b), as other courts within this district have done in the past" and collecting cases).

First, the "length of detention, which is the most important factor," weighs in Petitioner's favor. *Martinez*, 2019 WL 5968089, at *9. Petitioner has been detained for over nine months. (Mem. at 6.) That length of time aligns with the duration that other courts in this Circuit have found sufficiently prolonged to warrant relief. *Amado v. United States Dep't of Just.*, No. 3:25-cv-02687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (explaining that "[c]ourts have found detention over seven months without a bond hearing weigh toward a finding that it is unreasonable" and collecting cases).

The second factor also weighs in Petitioner's favor. This factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings

including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Petitioner's appeal of the Immigration Judge's decision "remains pending." (Mem. at 9.) Further, either party may seek Ninth Circuit review of the Board of Immigration Appeals' ("BIA") decision. Therefore, Petitioner faces indefinitely prolonged detention while administrative and potentially judicial appeals of her removal order are decided. Thus, this factor weighs in Petitioner's favor. *Loba L.M. v. Andrews*, No. 1:25-cv-00611-JLT-SAB-HC, 2025 WL 2939178, at *6 (E.D. Cal. Oct. 16, 2025), *report and recommendation adopted*, No. 1:25-cv-00611-JLT-SAB, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025) (finding that "[a]lthough future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"); *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-cv-01807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, No. 2:25-cv-01807-KKE-GJL, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026) (finding this factor weighed in favor of petitioner who had appealed the Immigration Judge's decision to the BIA).

The third factor, conditions of detention, tilts toward Petitioner. Petitioner has stated that prior to detention, she was not medicated for anxiety or depression; however, "[t]he uncertainty surrounding [her] detention and immigration proceedings has had a significant impact on [her] mental health." (Pet. at 2). She began receiving two medications for anxiety and depression while detained, but the continuity of that treatment has been disrupted by her transferring facilities. (*Id.*) Moreover, in order to receive her medicine, Petitioner is "routinely awakened around midnight or 1:00am . . . disrupting [her] sleep and affecting [her] overall well-being." (*Id.*)

The fourth factor, delays caused by Petitioner, is neutral. Respondents argue that "the length of Petitioner's detention is self-inflicted . . . She filed her appeal in mid-March and sought to extend her appeal briefing deadline an additional 30 days."

(Opp'n at 8.) Petitioner corrects that the extension was three weeks and contends that "the BIA is a proper avenue for relief that Petitioner is entitled to pursue," and that "[t]he fact that Petitioner chose to pursue an asylum claim and requested a modest extension of a briefing schedule does not deprive her of a constitutional right to due process, absent some indicia of bad faith or dilatory tactics." (Reply at 5.) Petitioner is correct. In assessing whether petitioners contributed to the delay, courts distinguish between "legitimate defenses" to removal, which "cannot undermine [a petitioner's] claim that detention has become unreasonable," and "dilatory" or "bad faith" tactics that "deliberately slow the proceedings." *Martinez*, 2019 WL 5968089, at *10 (internal citations omitted) (collecting cases). Here, Petitioner is pursuing a legitimate avenue for relief which she is entitled to pursue. *See Liban M.J. v. Sec'y of Dep't of Homeland Sec.,* 367 F. Supp. 3d 959, 965 (D. Minn. 2019) (holding that Petitioner with a pending BIA appeal "is entitled to raise legitimate defenses to removal" and such defenses are not "dilatory"). And as a district court has explained in the context of evaluating a delay attributable to the attorney for the purposes of determining attorney's fees, "[o]ne request for an extension of time does not equate to engaging in unreasonable delay." *Baugh v. Astrue*, No. 03:08-01237-HU, 2011 WL 4738196, at *5 (D. Or. Sept. 12, 2011), *report and recommendation adopted*, No. CIV. 3:08-1237-HU, 2011 WL 4738272 (D. Or. Oct. 5, 2011). A single three-week extension for briefing, standing alone, is not sufficient to show bad faith or deliberate dilatory tactics. There is no evidence that Petitioner's request for additional time for briefing was made in bad faith or was intended to slow down proceedings.

The fifth factor, delays caused by the Government, leans toward Petitioner. Petitioner's asylum proceedings were disrupted by the Government's motion to pretermit her case and remove her to a third-country, Uganda. (Mem. at 8). There is no evidence on the record that Uganda, a country to which Petitioner states she has "no ties", would accept Petitioner. (*Id.* at 6.); *see Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005) (explaining that Congress expressly directed the [Government] to

obtain consent when removing an alien to a country with which the alien lacks the ties of citizenship, nativity, previous presence, and so on"). Accordingly, the Court cannot find that there is a definitive end point, such as resolution of an appeal, that would make her removal reasonably foreseeable.

Moreover, the record demonstrates that an immigration official has already found, based on preliminary testimony, that Petitioner has experienced persecution at the hands of Cameroonian government officials, and that she has a credible fear of future persecution. (Mem. at 6; Mot. Ex. D (ECF No. 8-4) at 22–23.) But rather than litigate this well-trodden asylum claim, whatever the possible merits, Respondents diverted Petitioner's case towards litigating the complex constitutional, statutory, and regulatory issues involved in asylum pretermissions and third-country removals. *See Tran v. Noem*, No. 5:25-CV-02881-KS, 2026 WL 1182197, at *8 (C.D. Cal. Apr. 22, 2026), *report and recommendation adopted*, No. 5:25-CV-02881-DOC-KS, 2026 WL 1472416 (C.D. Cal. May 21, 2026) (collecting cases holding that "the current policies concerning third country removal present due process issues") (quotation omitted); *Alsheref v. Noem*, No. 1:25-CV-190-H, 2025 WL 4220420, at *3 (N.D. Tex. Dec. 3, 2025) (discussing the statutory framework governing third country removals and noting that "in view of these protections against third-country removal, the question of what procedures the Constitution requires [to effectuate third country removals] has been a topic of ongoing controversy") (citing *Trump v. J.G.G.*, 604 U.S. 670 (2025) and *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025)). Petitioner must now navigate this novel and unsettled terrain instead of presenting her asylum claim based on the persecution and harm she has credibly testified she suffered at the hands of the Cameroonian government. (*Id.* at 6–7).

Finally, the sixth factor is neutral as the Court lacks sufficient information to assess the likelihood that Petitioner's removal proceedings will result in a final order of removal and, therefore, declines to do so. *See Sarr v. Scott*, 765 F. Supp. 3d 1091, 1109 (W.D. Wash. 2025) (declining to speculate as to the merits of Petitioner's appeal

to the Ninth Circuit after the Immigration Judge and the BIA found Petitioner removable).

The balance of the factors favor Petitioner. Four of the six factors weigh in Petitioner's favor and two are neutral. In other words, every load-bearing factor supports Petitioner while none weigh in the Government's favor. Having established Petitioner has a liberty interest and determined that her prolonged and indefinite detention entitles her to process, the Court orders Petitioner's immediate release from custody.

**CONCLUSION**

IT IS HEREBY ORDERED that:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is granted as to the first ground for relief.
2. Respondents are ordered to immediately release Petitioner Synthia Mbah and return all of Petitoner's documents and possession.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner without a change in circumstances to warrant Petitioner's re-detention.
4. The Clerk is directed to serve California City Immigration Processing Center with a copy of this Order.
5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

IT IS SO ORDERED.

Dated: **September 9, 2026**

Daniel J. Calabretta
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC10-Mbah126-cv-04896.merits